# State of Vermont v. David A. Platt, Jr.

[610 A.2d 139]

No. 91-357

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed May 8, 1992

*Dan M. Davis*, Windham County State's Attorney, *Karen R. Carroll*, Deputy State's Attorney, and *Diane L. Shapiro*, Legal Intern, Brattleboro, for Plaintiff-Appellee.

*David G. Reid*, Brattleboro, for Defendant-Appellant.

**Dooley, J.** Defendant, who is HIV positive, pled no contest to a charge of accessory after the fact to a felony, and the district court sentenced him to a three-to-five-year prison term. He appeals the court's denial, after hearing, of his motion for sentence reconsideration. His principal argument is that promises of medical treatment which induced his plea have not been kept. He also argues that the court allowed evidence of and considered charges not brought against him in determining his sentence, that he was compelled to testify at the sentence reconsideration hearing in violation of his constitutional rights, and that he was improperly denied credit for time spent under conditions of release prior to his sentencing and incarceration. We affirm.

In December 1985, Christopher Fauber was murdered by a blow to the back of his head with a blunt instrument. His body was wrapped in plastic and taken to New Hampshire, where it was dumped over the bank of a highway rest area. Defendant was charged with the murder, and he pled not guilty. Later, in part because of weaknesses in its case against defendant, the State agreed to reduce the charge to accessory after the fact to

the murder. In return, defendant agreed to plead no contest to that charge. The amended information read:

> [defendant] was a person not standing in relation . . . to an offender, to wit; Michael Guerrera, who, after the commission of a felony, to wit; murder, assisted such offender, to wit; helped in the transportation and concealment of the victim's body with intent that Guerrera avoid arrest or punishment therefore . . . .

The maximum penalty for acting as an accessory after the fact to a felony is seven years in prison or a $1,000 fine, or both. 13 V.S.A. § 5.

On September 5, 1990, counsel for both parties appeared before the court and explained the terms of the plea agreement. Counsel for defendant expressed his client's concern about the medical treatment that defendant would receive while incarcerated if he was sentenced to prison. Defendant specifically sought the court's assurances with respect to the availability of certain medications and a special dietary program, and that he be provided with out-of-state transportation for respiratory therapy. The court agreed to inquire of the Department of Corrections (DOC) whether defendant's concerns could be met, and expressed its willingness to incorporate the substance of the needs expressed by defendant in an order to DOC. The court stated:

> They [the DOC] are hard and fast in maintaining their prerogative as to services and programming of inmates that a judge can't tell them what to do, in very plain English. So I, one, can assure you that I would make every effort to make such a proper order and, two, would try to at least get a weather report from Corrections as to whether this would be in the realm of possibility. And I suspect that's the best I will be able to get from them.

After speaking with a DOC official, the court indicated that, in principle, DOC objected only to transporting defendant out of state for treatment. The court agreed to order the Department to do a medical staffing in consultation with defendant's doctors and to issue a case plan before sentencing. The court further promised defendant that it would not impose a sentence greater than the four-to-seven-year term recommended by the State.

Defendant then pled no contest to the charge contained in the amended information. A sentencing hearing was held November 15–16, 1990, and the court sentenced defendant to a term of three-to-five years in prison. He was incarcerated the following month. In February, 1991, defendant filed a motion for review of his sentence under 13 V.S.A. § 7042(a) and V.R.Cr.P. 35. After hearings in May 1991, the court denied the motion.

■ Before we address defendant's specific claims, we must emphasize that only certain issues may be raised in a sentence reconsideration proceeding. Sentence reconsideration can be used to correct an illegal sentence or one "imposed in an illegal manner." V.R.Cr.P. 35(a); see *State v. Davis*, 155 Vt. 417, 418, 584 A.2d 1146, 1147 (1990). More often it is used to modify a lawful sentence. V.R.Cr.P. 35(b), (c). We recently said:

> "The purpose of sentence reconsideration is to allow a second look at the sentencing decision 'absent the heat of trial pressures and in calm reflection to determine that it is correct, fair, and serves the ends of justice.' [13 V.S.A. § 7042(a)] allows modification of a sentence 'which, upon reflection and in the presence of unchanged circumstances, might be shown to be unwise or unjust.' In making these determinations, the trial court has wide discretion to consider such factors as it believes are relevant."

*State v. Hance*, 157 Vt. 222, 226, 596 A.2d 365, 367 (1991) (quoting *State v. Dean*, 148 Vt. 510, 513, 536 A.2d 909, 912 (1987)) (citations omitted). It is not the purpose of sentence reconsideration to review circumstances that come about following the imposition of the sentence; generally, the review is only of the "'circumstances and factors present at the time of the original sentencing.'" *State v. Derouchie*, 157 Vt. 573, 577, 600 A.2d 1323, 1325 (1991) (quoting *State v. LaPine*, 148 Vt. 14, 15, 527 A.2d 1150, 1150 (1987)).

Defendant's motion for sentence reconsideration did not attack the legality of the sentence or the sentencing procedure. Instead, he asked the court to reduce the sentence, pursuant to V.R.Cr.P. 35, to eliminate any requirement of incarceration because the court had sentenced him as if he were charged with murder. He also maintained that he was not receiving proper medical care within the corrections system, and that he was subject to harassment by inmates and guards.

With that background in mind, we first address defendant's claim that the court failed to adhere to promises with respect to medical treatment it made as part of the consideration for defendant's plea. We conclude that this claim is not supported by either the facts or the law.

A review of the record shows that prior to defendant's plea the trial judge indicated his willingness in principle to order that defendant receive the specific medical treatment he requested. As set forth above, he added that DOC would take the position that it was not bound by such an order and he contacted DOC to inquire as to how they would respond to such a directive. After he spoke with the Commissioner of Corrections, he proposed that he order DOC to do a staffing report. Defendant accepted this suggestion, and there was no further mention of a direction to DOC to provide defendant specific treatment. Defendant pled no contest based on the court's promise to request the staffing report. The report was produced at the sentencing hearing, and a DOC nurse testified at length about the care defendant could expect if he were imprisoned. Defendant did not object to the adequacy of the report, nor did he ask at sentencing that the court order specific medical care.

Defendant argues that the treatment plan contained in the DOC staffing report has not been implemented and that the court's failure to insure the provision of treatment violates the commitment it made to induce defendant to change his plea. After evidence was presented at the sentence review hearing, the court found that its promise to order the staffing had been fulfilled by the completion of the report and that, although the treatment expected by the court at the time of sentencing had not taken place, it was largely due to defendant's failure to accept the treatment offered by the DOC and refusal to cooperate with the DOC's medical staff. The record supports the court's view of its obligation. It did not make itself a surety for the treatment defendant would receive in prison. If there is a claim of breach of commitment, it lies against DOC and not the court.

There are two alternative remedies for breach of a plea agreement: specific enforcement of the agreement or allowance of a plea withdrawal. *In re LaRose*, 141 Vt. 1, 4, 442 A.2d 467, 469 (1982); see also *Santobello v. New York*, 404 U.S.

257, 263 (1971) (state court in better position to determine, after there has been a material breach of plea agreement, whether appropriate remedy is specific enforcement or allowance of plea withdrawal). Defendant has sought neither enforcement of the purported obligation to provide specific medical services nor withdrawal of his plea. In *State v. Cyr*, 141 Vt. 355, 357, 449 A.2d 926, 927 (1982), we held that relying on improper information in a presentence investigation report as grounds to strike a conviction and withdraw a plea "is completely inapposite." Reliance on breach of a plea agreement to obtain a reduction of sentence similarly fails. Even if defendant's claim were factually supported, he would not be entitled to the relief he seeks.

We next address defendant's claim that the court improperly considered charges not brought against him in fashioning its sentence. The court allowed the State at the sentencing hearing, over defendant's objection, to present evidence to show that defendant played a role not only in disposing of the victim's body, but also in the murder itself. Defendant argues that, because he pled no contest to the charge of accessory after the fact to the murder, any evidence tending to show his culpability for the murder itself should have been excluded as being irrelevant and prejudicial.

■ If this were a direct appeal of the sentence, we would consider the propriety of the procedure used by the court. See *State v. Thompson*, 150 Vt. 640, 641, 556 A.2d 95, 96 (1989) (appeal of sentence imposed is encompassed in 13 V.S.A. § 7401, providing appeal of right of "judgment of conviction"). Defendant failed to appeal, however, and raised this claim as grounds for modification of sentence under Rule 35(b). Thus, defendant sought the favorable exercise of the wide discretion of the trial court, see *State v. Dean*, 148 Vt. at 513, 536 A.2d at 912, essentially asking that the court look again at the sentence without considering the evidence of defendant's involvement in the murder.[1]

---

[1] In his reply brief, defendant argues that we should review the sentence under Rule 35(a) as one "imposed in an illegal manner." We need not reach whether defendant has made out a claim of imposition in an illegal manner.

■ The court went through the reconsideration that defendant sought but came to a different conclusion. The court stated:

[T]he court was not indulging in any thought process whereby it was concluding that the defendant, in fact, committed the murder and, therefore, although charged with the different offense, should be sentenced as a murderer. I think the results of the sentencing in and of itself, speak for that conclusion. If the court had indulged in such a thorough process, certainly a three to five year sentence would not have been imposed in spite of the other mitigating factors. We did not do that, and we reject the notion that we were in any way influenced by it.

We have no grounds to fault the court's analysis or result. It engaged in the calm reflection the rule requires, and its conclusion was within its discretion. See *State v. Derouchie*, 157 Vt. at 578, 600 A.2d at 1326 (court may consider such factors as it deems relevant, and we have "relaxed the scrutiny ordinarily paid to the adequacy of findings").

Defendant's next contention is that he was compelled to testify at the sentence reconsideration hearing in violation of his constitutional privilege against self-incrimination. This issue arises because the court allowed the State to examine defendant, over his objection, about his medical needs and care. Defendant argues that this testimony violates the Fifth Amendment to the United States Constitution because the reconsideration proceeding is part of the sentencing procedure and, therefore, he was "compelled in a criminal case to be a witness against himself." United States Constitution, Amendment V; see 13 V.S.A. § 6601; *Estelle v. Smith*, 451 U.S. 454, 462 (1981).

■■ In *State v. Dean*, 148 Vt. at 514, 536 A.2d at 912, this Court held that although sentencing is part of the criminal "trial" for purposes of the speedy trial right, sentence reconsideration is not part of the trial. For similar reasons, we conclude that sentence reconsideration is not part of the basic

---

He never made this argument in the trial court. He sought only sentence reduction. He never sought resentencing, which would have been the result of a determination that the sentence was imposed in an illegal manner. See 3 C. Wright, Federal Practice and Procedure § 585, at 398 (2d ed. 1982).

criminal case for purposes of the Fifth Amendment guarantee. See also *State v. Hance*, 157 Vt. at 226, 596 A.2d at 368 (sentence reconsideration is highly discretionary remedy that does not occupy a central place in the administration of justice); *Minnesota v. Murphy*, 465 U.S. 420, 435–36 n.7 (1984) (probation revocation is not criminal proceeding for purposes of self-incrimination right). The imposition of sentence extinguished the right of self-incrimination with respect to the crime for which defendant was convicted. *State v. Gleason*, 154 Vt. 205, 212, 576 A.2d 1246, 1250 (1990). The sole issue before the court was whether the sentence would be reduced.

■ Even if there was error in having defendant testify, it was harmless. The testimony related to defendant's medical needs and care and not to the underlying offense.[2] Much of the testimony, if not all, related to "defendant's conduct and behavior since sentencing" and was irrelevant in a sentence reconsideration proceeding. *State v. LaPine*, 148 Vt. at 15, 527 A.2d at 1150. Defendant suffered no prejudice from his testimony.

Defendant's final contention on appeal is that the trial court erred in not granting him credit for time spent under conditions of release prior to sentencing and incarceration. During approximately two and one-half years of the period between his arrest and sentencing and incarceration, defendant was required to remain in Windham County, where he lived, be at his residence from the hours of 11:00 p.m. to 6:00 a.m., and check in with probation officers three times a week. Defendant was permitted, on his occasional requests, to deviate from those requirements for certain medical needs and family events.

The courts are mandated to grant sentencing credit for any days "spent in custody in connection with the offense for which sentence was imposed." 13 V.S.A. § 7031(b). The trial court here

---

[2] Defendant's counsel made a motion in limine asking the court to prohibit the prosecutor from asking questions about the underlying offense. Before the court could rule, the prosecutor agreed he would ask no questions about the underlying offense. He did not ask any such questions. He did ask about defendant's drug usage and gave defendant use immunity in order to obtain an answer. There were some objections to questions on self-incrimination grounds, but the questions were withdrawn or rephrased to avoid the objection. There is no claim that any part of defendant's testimony incriminated him.

determined that defendant's release on conditions did not amount to custody for the purpose of the statute because the conditions did not involve "a significant imposition on the defendant's freedom" and were not the "functional equivalent of incarceration."

We addressed a similar issue on different facts in *In re McPhee*, 141 Vt. 4, 442 A.2d 1285 (1982). In that case the trial court had granted credit for time spent at a residential alcohol treatment facility pursuant to the trial court's pretrial release order. We held that the statute called for a case-by-case factual determination. *Id.* at 9, 442 A.2d at 1287–88. In upholding the trial court, we noted that defendant could not live in a place of his choosing, was subject to constant supervision and direction by the staff of the treatment center and for much of the time could not leave the place to which he was restricted at any time of day or night absent special dispensation and an escort from the institution. *Id.* at 6, 442 A.2d at 1286.

The relevant language of our sentence-credit statute is identical to that of the federal statute as it existed prior to November 1, 1986. See 18 U.S.C. § 3568, repealed by Pub. L. 98–473, § 212(a)(1). The federal courts have held that the federal statute requires imprisonment or some comparable institutional confinement for credit to be earned. See, e.g., *United States v. Figueroa*, 828 F.2d 70, 71 (1st Cir. 1987).

■ This case is distinguishable from *McPhee* both in kind and in degree. The defendant in *McPhee* was in the custody of a treatment center and thus was institutionally confined. Defendant here was not in the custody of any other person and was not in an institutional setting. The restrictions placed on defendant here do not approach those in *McPhee*. Defendant was restricted to his home for seven hours each night but was permitted to choose his residence, and he was free to spend his days how and where he wished, within the confines of a county, so long as he did not violate the law. He was not "in custody" within the meaning of 13 V.S.A. § 7031(b).

*Affirmed.*