2013 VT 104

# State of Vermont v. Joseph T. Kenvin

[87 A.3d 454]

No. 12-099

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed October 18, 2013

*James A. Hughes*, Franklin County State's Attorney, St. Albans, for Plaintiff-Appellee.

*Matthew F. Valerio*, Defender General, and *Anna Saxman*, Deputy Defender General, Montpelier, for Defendant-Appellant.

¶ 1. **Skoglund, J.** Defendant Joseph Kenvin appeals from a sentencing reconsideration decision by the superior court, reducing the time to serve on his conviction for careless and negligent driving from eleven-to-twelve months to nine-to-twelve months. Defendant contends the trial court erred in: (1) finding him "very negligent" in causing the death of a collision victim, despite the jury's acquittal on the underlying charge of grossly negligent operation, death resulting, and (2) ruling that defendant was not entitled to credit for time served while on restrictive conditions of pretrial release. We affirm defendant's sentence but remand to the trial court to provide credit to defendant for the period between March 10, 2010 and March 22, 2010 during which defendant was subject to a twenty-four hour curfew.

¶ 2. The facts are as follows. This case arises out of a September 3, 2008 motor vehicle collision in which defendant's pickup truck collided with a motorcycle. The motorcyclist died from injuries sustained in the accident. The State charged defendant with grossly negligent operation, death resulting, under 23 V.S.A. § 1091(b). Following arraignment, the court released defendant on conditions of release.

¶ 3. In February 2010, a jury acquitted defendant of grossly negligent operation, death resulting, and convicted him of the lesser-included offense of negligent operation, 23 V.S.A. § 1091(a). The court held a sentencing hearing on March 10, 2010. At the hearing, the court found that defendant caused the death of the motorcyclist:

> This death was caused because you were a lazy driver. Instead of going up and making a turn where you should have made a turn, you took — you cut your turn, and you made a lazy turn. There's no question about the fact that you [bear] the sole responsibility for this. This is [as] serious . . . careless and negligent driving as you can get.

The court sentenced defendant to "the maximum [it] could give [defendant]," eleven-to-twelve months to serve. The court also signed two restitution orders. The first order was for the decedent motorcyclist's wife to cover expenses associated with family travel to the funeral, storage costs for the decedent's motorcycle, and a radiology bill from the decedent's hospitalization not covered by insurance. The second order was for the victim's compensation program.

¶ 4. Defendant requested a stay of execution pending an appeal to this Court. The superior court granted the stay and imposed the conditions of release in place prior to defendant's trial. The court also added a twenty-four-hour curfew, requiring defendant "to stay in his home at all times. No exceptions." The court told defendant "I consider you to be a dangerous person. You have three times been convicted of a dangerous activity with respect to a motor vehicle on the highway. You've killed a person. As far as I'm concerned, you're a menace to society."

¶ 5. The next day, defendant filed a motion requesting the court to amend his conditions of release. Defendant sought several modifications, and specifically requested the ability to travel to an area where cell phone service was available because the only household income at that time was defendant's weekly unemployment benefits check. Defendant's motion explained that in order to continue receiving unemployment compensation, he needed to maintain a work search and to have weekly internet contact with the unemployment division. The motion identified the library where defendant typically used the internet for this contact as well as the establishment where defendant cashed his unemployment compensation checks, though the motion did not request permission for trips to these locations. The court granted the motion on March 22, 2010, amending the conditions of release to allow defendant to travel to a location where cell phone service was available, to appear at meetings at his attorney's office, to attend necessary medical appointments, and to walk his dog on two, one-hour walks per day beginning and ending at his residence. The conditions did not specify a person responsible for the custody of defendant and did not dictate where he must reside. It is undisputed that defendant complied with these conditions.

¶ 6. On April 7, 2010, defendant filed a notice of appeal and election not to commence service of his sentence. In his direct appeal, defendant challenged the trial court's restitution orders as

well as his sentence of eleven-to-twelve months to serve. *State v. Kenvin*, 2011 VT 123, ¶¶ 6, 18, 191 Vt. 30, 38 A.3d 26. The appeal challenged the sentence, arguing only that a sentence with a gap of thirty days between the minimum and maximum term was a fixed sentence in violation of 13 V.S.A. § 7031(a). Defendant did not challenge the sentence on the basis that the sentencing judge grounded the sentence provision on the finding that defendant caused the death of the victim. While the appeal was pending, defendant filed a motion on March 2, 2011, to further amend his conditions of release for purposes of "work search and employment," in order to "to seek work, and go to and from work once employment is secured." The court granted the motion on March 22, 2011, and altered defendant's conditions to allow him to look for work from 8 a.m. until noon, and at other times by scheduled appointment.

¶ 7. Defendant filed a motion to again amend his conditions of release on October 31, 2011, requesting permission "to drive for work search and work purposes, as long as he possesses a valid driver's license." Before the court disposed of the motion, on November 4, 2011, this Court decided defendant's direct appeal. We upheld defendant's sentence of eleven-to-twelve months to serve. We reversed and remanded the restitution orders, however, holding that Vermont's restitution statute, 13 V.S.A. § 7043, did not authorize restitution for the family's travel or the costs of motorcycle storage, but it did cover the decedent's hospital bill. *Kenvin*, 2011 VT 123, ¶ 11. As to the former expenses, we found no facts or law to support a finding that these financial injuries were the "direct result" of the crime. *Id.* ¶ 9 (citing 13 V.S.A. § 5301(4)).

¶ 8. Defendant then filed a motion for sentence reconsideration with the trial court. Defendant asserted that the conditions of release originally imposed on March 10, 2010, and amended on March 22, 2010, were "very stringent conditions of release that amounted to the equivalent of home confinement"; that defendant "was not permitted to drive under any circumstances, though he possessed a valid license"; and that even when the court modified defendant's conditions on March 22, 2011 to allow driving for an employment search and travel upon securing a position, "the rural nature of his residence, his inability to drive, and his domestic partner's other obligations effectively did little to remove the restrictiveness of the court-imposed conditions." Defendant stated

that the imposition of these conditions caused further deterioration of his household's financial condition and warranted reconsideration of his sentence.

¶ 9. The court held a hearing on the motion for sentence reconsideration on March 1, 2012, issuing a written decision two weeks later.[1] On the issue of sentence length, the court made two findings relevant to this appeal. First, the court found that defendant was "very negligent . . . cutting the corner [of a left hand turn] out of laziness, and hitting an oncoming motorcycle almost head on in the motorcycle's lane of travel." Second, the court found by a preponderance of the evidence that defendant's negligence caused the accident and the motorcyclist's death. The court reasoned that the jury's decisions to acquit defendant of grossly negligent operation, death resulting, and to convict defendant of negligent operation, left the court free to decide defendant caused the motorcyclist's death. However, the sentencing reconsideration judge disagreed with one aspect of the sentencing judge's decision. The court concluded it was "excessively harsh" for the sentencing judge to characterize defendant as a "menace to society," a comment the court attributed to the distressing evidence presented at trial. The court weighed mitigating factors against the nature of the accident and defendant's driving history, and decided that deterrence was the most important purpose to be served by defendant's sentence. Ultimately, the court reduced defendant's sentence to nine-to-twelve months to serve.

¶ 10. The court also ruled defendant was not "in custody" under 13 V.S.A. § 7031 and therefore not entitled to credit for time served for the period he was on conditions of release awaiting the decision in his direct appeal. The court came to this conclusion for three reasons: (1) events occurring since the original sentencing hearing, including defendant's financial condition, were not the proper subject of sentencing reconsideration; (2) defendant's conditions of release, though restrictive, were not akin to incarceration in an institution; and (3) it was possible for defendant to

---

[1] The judge who presided over defendant's trial and sentenced defendant retired prior to defendant filing the motion for sentence reconsideration. The Administrative Judge for Trial Courts designated a different judge to hear and dispose of all matters in the retired judge's pending cases, including defendant's motion. Defendant objected to this order below, but does not pursue the challenge on appeal.

avoid "virtual home confinement" by serving his sentence during the pendency of his appeal, and "[h]aving elected to proceed in that fashion, defendant cannot now argue that his sentence must be reduced due to the passage of time."

¶ 11. Defendant advances two principal arguments on appeal. First, defendant posits the court's findings that defendant was "very negligent" and caused the motorcylist's death reflect an improper reliance upon speculative and unreliable factors during sentencing reconsideration. Second, defendant asserts that he is entitled to credit for time served because his conditions of release were the functional equivalent of home detention.[2]

¶ 12. ■ ■ Under 13 V.S.A. § 7042(a), "[a]ny court imposing a sentence . . . may upon its own initiative or motion of the defendant, reduce the sentence." "The purpose of sentence reconsideration is to allow a second look at the sentencing decision absent the heat of trial pressures and in calm reflection to determine that it is correct, fair, and serves the ends of justice." *State v. Dean*, 148 Vt. 510, 513, 536 A.2d 909, 912 (1987) (quotation omitted). Sentence reconsideration gives the court "an opportunity to consider anew the circumstances and factors present at the time of the original sentencing. It is not intended as a forum to review post-incarceration circumstances or events." *State v. King*, 2007 VT 124, ¶ 6, 183 Vt. 539, 944 A.2d 224 (mem.) (quotation and citation omitted). But see *State v. Derouchie*, 157 Vt. 573, 577, 600 A.2d 1323, 1325 (1991) (allowing consideration of post-sentencing circumstances because court expressly informed defendant at original sentencing that "his situation between sentencing and reconsideration would be relevant"). In determining if a sentence is unwise or unjust so as to warrant sentence modification, "the trial court has wide discretion to consider such factors as it believes are relevant." *Dean*, 148 Vt. at 513, 536 A.2d at 912. Accordingly, this Court reviews sentencing reconsideration decisions for abuse of discretion. *King*, 2007 VT 124, ¶ 6. Here, the reconsideration court lowered the sentence imposed by the trial judge. While the result does not absolutely prevent relief, it puts

---

[2] Defendant presented evidence to the sentencing reconsideration court intending to demonstrate that his sentence was excessive and disproportional, presumably intended as a basis for reducing his sentence. Defendant includes information on proportionality in his appellate brief, but does not further advance this argument on appeal. Therefore, the Court will not address this issue.

in perspective defendant's claim that the reconsideration court's result is too harsh.

¶ 13. ██ ██ Defendant contends that the jury found defendant was not grossly negligent, and therefore on sentence reconsideration it was impermissible for the court to make a finding that defendant was "very negligent." As we have explained, "[t]he propensity and nature of the offender, the particular acts by which the crime was committed, and the circumstances of the offense are all relevant to the determination of an appropriate sentence." *State v. Bushway*, 146 Vt. 405, 407, 505 A.2d 660, 661 (1985); see also *Derouchie*, 157 Vt. at 577-79, 600 A.2d at 1325-26 (upholding denial of motion for sentence reconsideration and holding it was not clearly erroneous for trial court to consider its assessment that defendant was insincere in acknowledging responsibility for his offense); *State v. Thompson*, 150 Vt. 640, 646, 556 A.2d 95, 99 (1989) (recognizing that force is not an essential element of sexual assault on minor charge, but this fact does not "make the evidence that force of some sort was involved irrelevant at trial or improper for consideration of sentence . . . it is relevant to the propensities of defendant and the circumstances under which the crime was committed, all recognized as proper for the sentencing court's consideration"); *Bushway*, 146 Vt. at 407, 505 A.2d at 662 (holding victim's emotional testimony describing defendant's actions gave court "firsthand insight into both the defendant's character and the nature of the criminal act for which the defendant was being sentenced"). It was within the court's discretion to make a finding that defendant was "very negligent," even though the jury acquitted defendant of grossly negligent operation, death resulting. The court's assessment of defendant's actions leading up to the motor-vehicle accident, characterized by the court as "lazy," was relevant to evaluating the appropriateness of defendant's sentence. Moreover, the court supported this finding in its review of the circumstances of the accident and defendant's driving history — and these factors informed the court's conclusion that deterrence was the most important function of sentencing to be served in this case.[3]

---

[3] In a supplemental filing made after oral argument, defendant cites *Commonwealth v. McCravy*, 723 N.E.2d 517 (Mass. 2000), to support his argument that his sentence could not be based upon a crime that he was acquitted of or with which he was not charged. Defendant was not sentenced for a crime that he did not commit, nor was

¶ 14. Defendant further contends the trial court erred in finding that defendant caused the death of the motorcyclist, relying on this Court's statement in *Kenvin* that "absent any element of injury or harm, the conviction of negligent operation can not be causally linked to the decedent's death, and thus cannot support a restitution award for any resulting financial loss." 2011 VT 123, ¶ 12. In defendant's view, this statement suggests that we held as a matter of law that the motorcyclist's death was not linked to defendant's conviction for purposes of restitution, and therefore cannot be linked to the conviction for sentencing purposes.

¶ 15. ▮ Defendant overreads our holding in *Kenvin*. Despite the broad language noted above, we did not hold in *Kenvin* that, as a matter of law, the motorcyclist's death was not caused by the actions for which defendant was convicted of careless and negligent operation. In fact, in *Kenvin*, we affirmed an award of restitution to cover a medical bill of the decedent that was not covered by insurance, thereby recognizing the direct causal link between the conduct for which the jury convicted defendant and the decedent's injuries and, ultimately, death. 2011 VT 123, ¶ 13. The restitution claims we rejected in *Kenvin* as too attenuated were those made by his family members, who incurred costs traveling to the decedent's funeral and storing his motorcycle. We noted that § 7043 "is 'much narrower' than restitution statutes in other jurisdictions" and that it requires a "direct link" between the crime and the financial injury to a victim for which restitution is sought. *Id.* ¶ 9. Although we recognized that the decedent's family had suffered greatly, we concluded that under the applicable statute, "[t]he decedent . . . was the sole victim of defendant's crime for consideration of restitution." *Id.* ¶ 13. Nothing about our holding in *Kenvin* — recognizing the direct link between the crime for which defendant was convicted and the injury to and ultimate death of the motorcyclist, but concluding that the motorcyclist's surviving family members were not included as victims under the statute — is inconsistent with the trial court's pointing to the motorcyclist's death as a result of defendant's actions as a factor in the resentencing decision. We note, moreover, that the original sentencing judge in this case found that defendant caused the motorcyclist's death in reaching

he sentenced for a crime with which he was not charged. We thus find defendant's reliance on this case to be misplaced.

the sentence, and defendant never challenged this finding on appeal. Rather than making a new finding on this point, the sentence reconsideration judge was simply following the original finding.

¶ 16. Defendant further claims that the court guessed as to the meaning of the jury verdict and arrived at its own conclusions without any supporting proof or evidence, comparing the court's conclusion regarding the cause of the motorcyclist's death to the speculative and unreliable information held improper for sentencing consideration in *State v. Neale*, 145 Vt. 423, 435-36, 491 A.2d 1025, 1033 (1985). In *Neale*, this Court held that it was improper for a sentencing judge to consider statements by a sheriff comprised of "unsubstantiated insinuations" irrelevant to the actual criminal conviction. *Id.* The jury's decision to find defendant guilty of careless and negligent driving and not guilty of grossly negligent operation, death resulting, did not, as a matter of law, resolve the issue of causation of the motorcyclist's death, and did not preclude the court from doing so. In contrast to *Neale*, the sentencing reconsideration court here based its findings on a review of evidence regarding defendant's acts and the circumstances of the offense — factors within its discretion to consider. With respect to causation, the sentencing reconsideration court's decision is identical to that of the trial judge, who viewed the evidence.

¶ 17. ██ Finally, defendant asserts the trial court "enhanced" his sentence based on its finding that defendant was "very negligent" in causing the motorcyclist's death and that it would be reversible error to convict defendant of "careless and negligent driving causing death," a nonexistent crime. As the Court explained in *Thompson*, proof of circumstances relevant to the crime convicted is not offered for sentencing "enhancement" purposes. 150 Vt. at 644, 556 A.2d at 98. "This is a misuse of the term 'enhancement.' If it were otherwise, proof of any circumstance that might persuade a judge to raise the sentence, even within the statutory range, would fall within the doctrine. This is plainly not so." *Id.*; *State v. Muscari*, 174 Vt. 101, 111-13, 807 A.2d 407, 416 (2002) (rejecting contention that court's consideration of defendant's silence and apparent lack of remorse in sentencing process served as basis to "enhance" defendant's sentence because sentence was within statutory guidelines for crime and "it is entirely proper for a court to consider whether a defendant has accepted

responsibility for the offense at sentencing"). The court was within its discretion to consider defendant's negligence and the cause of the decedent's death in designing defendant's sentence, which adhered to the statutory maximum for careless and negligent operation. See 23 V.S.A. § 1091(a)(3).

¶ 18. Defendant next argues that the trial court erred in not granting him credit against his sentence for two periods he was released on conditions pending the outcome of his direct appeal. Defendant seeks credit first for his time on conditions of release from March 10, 2010 to March 22, 2010, along with credit for his continuing release on modified conditions from March 22, 2010 through March 22, 2011.

¶ 19. From March 10, 2010 to March 22, 2010, defendant's conditions of release required him to stay in his home at all times without exception. On defendant's motion, the court modified the conditions which remained in place until March 22, 2011. As amended, the somewhat relaxed conditions allowed defendant to travel to a location where cell phone service was available, to attend meetings at his attorney's office, to attend necessary medical appointments, and to walk his dog for an hour twice daily beginning and ending at his residence. Defendant does not seek credit for time spent on the conditions as altered again upon his motion on March 22, 2011, which allowed for defendant to leave his residence to look for work from 8 a.m. until noon, and at other times by scheduled appointment.

¶ 20. ■ "The court shall give the person [convicted of an offense] credit toward service of his or her sentence for any days spent in custody in connection with the offense for which [the] sentence was imposed." 13 V.S.A. § 7031(b). The statute "call[s] for a case-by-case factual determination" as to whether a defendant's conditions of release amount to custody under § 7031(b). *State v. Platt*, 158 Vt. 423, 431, 610 A.2d 139, 144 (1992). When the sentencing court is presented with a request for credit for time spent in custody under § 7031, the calculation involves a legal question. *State v. Sommer*, 2011 VT 59, ¶ 8, 190 Vt. 236, 27 A.3d 1059. The Court reviews questions of law de novo. See *Progressive Cas. Ins. Co. v. Estate of Keenan*, 2007 VT 86, ¶ 6, 182 Vt. 298, 937 A.2d 630.

¶ 21. The sentencing reconsideration court ruled that "although defendant's release conditions were restrictive, they were not akin

to incarceration in a penal facility." (Quotation omitted.) Two decisions inform our evaluation of this conclusion. First, in *In re McPhee*, the Court held that conditions of release mandating a defendant's institutionalization at a treatment facility invoked the credit provision of § 7031. 141 Vt. 4, 9, 442 A.2d 1285, 1287-88 (1982). The Court noted that the conditions allowed the defendant to leave the institution unsupervised if he obtained prior authorization from staff and stated his purpose, destination, and time of return. The conditions of release required the defendant both to reside at the institution and to abide by its rules. While the defendant was not in the custody of the Commissioner of Corrections, the Court was "satisfied that the lower court's decision to award credit to this defendant is fully supportable in the light of these circumstances." *Id.* at 9, 442 A.2d at 1288.

¶ 22. Second, in *Platt*, the defendant's conditions of release required him to stay in the county where he lived, to remain in his residence from 11 p.m. to 6 a.m., and to check in with his probation officer three times a week. The defendant was allowed to deviate from these requirements upon his occasional request, such as for medical needs and family events. In evaluating whether the defendant's conditions amounted to custody, we examined *McPhee* and further explained that the pertinent language of § 7031 "is identical to that of the federal statute as it existed prior to November 1, 1986." 158 Vt. at 431, 610 A.2d at 145 (citing 18 U.S.C. § 3568, repealed by Pub. L. No. 98-473, 98 Stat. 1837, § 212(a)(1)). We explained that "[t]he federal courts have held that the federal statute requires imprisonment or some comparable institutional confinement for credit to be earned." *Id.* We held in *Platt* that the defendant was not entitled to credit for time served while on conditions, reasoning in part that the defendant was neither in the custody of another person nor institutionally confined. *Id.* Moreover, though the conditions restricted the defendant to his home for seven hours each night, they permitted him to choose his residence, "spend his days how and where he wished, within the confines of a county, so long as he did not violate the law." *Id.*

¶ 23. ■ Our analysis begins with defendant's amended conditions in place from March 22, 2010 until March 22, 2011, which relegated defendant to his home but allowed him to travel to a cell-phone-reception area, attend appointments, and walk his dog. Weighing *McPhee* and *Platt* against the trial court's decision not

to award defendant credit and the facts of this case, we conclude that defendant is not eligible for § 7031 credit for this time period. Defendant's conditions did not specify a person responsible for his custody and did not dictate the locality of his residence. Defendant was not institutionally confined and failed on this record to show some comparable institutional confinement in his situation living at home. See *In re McPhee*, 141 Vt. at 9, 442 A.2d at 1287 (stating in context of § 7031(b) credit, Court will not "treat custody so uniformly that a release in the custody of a parent which permits living at home becomes indistinguishable from a release in the custody of the commissioner of corrections for institutional confinement"). He was free to spend his days as he wished in his home, to travel to a location where cell-phone service was available at his leisure, and to walk his dog to any place, whenever he desired, so long as the walks began and ended at his home and did not exceed one hour apiece. The conditions allowed defendant to attend meetings with his attorney as well as medical appointments. Defendant was not accountable to any person for these actions; the court required no prior authorization and no log of the purpose, destination, or duration of defendant's movements.

¶ 24. Defendant argues further that he is entitled to credit because the Legislature determined "home detention" qualifies for credit, as evinced by Vermont's home detention program, 13 V.S.A. § 7554b. The home detention program statute, 13 V.S.A. § 7554b(a), provides:

> As used in this section, "home detention" means a program of confinement and supervision that restricts a defendant to a preapproved residence continuously, except for authorized absences, and is enforced by appropriate means of surveillance and electronic monitoring by the Department of Corrections. The Court may authorize scheduled absences such as work, school, or treatment. Any changes in the schedule shall be solely at the discretion of the Department of Corrections. A defendant who is on home detention shall remain in the custody of the Commissioner of Corrections with conditions set by the court.

¶ 25. We are not persuaded that defendant's conditions from March 22, 2010 to March 22, 2011 were the equivalent of home detention as described in § 7554b. While it is undisputed that

defendant complied with his conditions of release, defendant points to no evidence in the record — and indeed none exists — to support his assertion that "he was presumably being monitored for compliance with his conditions" as would be the case if defendant was in the custody of the commissioner of corrections. In contrast to § 7554b, defendant's conditions did not have in place enforcement mechanisms such as surveillance and/or electronic monitoring. Moreover, the court did not require defendant to live in a "preapproved residence continuously, except for authorized absences" as mandated by § 7554b.[4] As discussed, defendant's conditions allowed substantial freedom in movement at his discretion — rather than the judgment of another — which is not contemplated by the home detention program. Under the circumstances of this case, defendant failed to establish that his conditions of release from March 22, 2010 and March 22, 2011, were, by analogy, substantially as limiting as restrictions in the home detention program. The trial court's conclusion that defendant's conditions were not akin to incarceration in an institutional setting under § 7031 was correct; defendant is not entitled to credit for time served during that period.[5]

¶ 26. ▇▇▇ However, in light of the above analysis, we cannot reach the same conclusion for defendant's earlier term of home confinement between March 10, 2010 and March 22, 2010. During these days defendant's conditions of release required him to stay in his home at all times without exception. The conditions of release in place during this time did not require defendant's institutionalization and did not have enforcement mechanisms in place comparable to those in § 7554b(a). However, the conditions were significantly more restrictive than those later in place from March 22, 2010 to March 22, 2011, and mandated defendant's

---

[4] This restriction also distinguishes defendant's conditions of release from the home confinement furlough statute. See 28 V.S.A. § 808b(c)(1) (requiring defendant on home confinement furlough "to remain at a preapproved residence at all times except for scheduled and preapproved absences for work, school, treatment, attorney appointments, court appearances, and other obligations as the Court may order"). Further, it was not necessary for the court to determine if defendant's residence was appropriate for home confinement furlough. See *id.* § 808b(d)(1)-(3).

[5] We need not address the trial court's other reasons for concluding defendant was not "in custody" under § 7031. See *Sorge v. State*, 171 Vt. 171, 174 n.*, 762 A.2d 816, 818 n.* (2000) ("This Court may affirm a trial court's decision if the correct result is reached, despite the fact that the court based its decision on a different or improper rationale.").

continual residence in his home without exception. This condition constrained defendant to a single place and did not allow any discretionary movement or travel by defendant — with or without permission or supervision — as allowed by the amended conditions. This rigid, twenty-four-hour curfew was sufficiently onerous to invoke the credit provision of § 7031, and he is entitled to credit for those days he spent "in custody."

¶ 27. ■■■ Defendant's final contention is that imposition of draconian conditions of release following the request for and granting of a stay of execution of defendant's sentence appeared vindictive and penalized him for taking an appeal. Courts cannot penalize a defendant for exercising his or her right to appeal. *State v. Thompson*, 158 Vt. 452, 456, 613 A.2d 192, 195 (1992). To avoid running afoul of retaliatory sentencing rules the courts can "impose[ ] a penalty not more severe than that which it originally proposed" when a defendant indicates an intent to appeal. *Id.* at 458, 613 A.2d at 196.

¶ 28. ■■■ Defendant's argument that the court was vindictive in imposing conditions of release is incongruent with the logic underlying § 7031 credit for time served. From March 22, 2010 to March 22, 2011, defendant's conditions did not amount to "custody" under § 7031, and therefore cannot be considered a sentence or penalty imposed to chill his right to appeal. Further, defendant is entitled to sentencing credit for the time he spent "in custody" from March 10, 2010 to March 22, 2010. Neither of these results increase defendant's overall sentence.

*We affirm defendant's sentence but remand to the trial court to provide credit to defendant for the period between March 10, 2010 and March 22, 2010 as indicated in this opinion.*