NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 47

No. 2015-409

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Orange Unit, |
| | Criminal Division |
| | |
| Dale Byam | September Term, 2016 |

Michael C. Pratt, Acting Superior Judge, Specially Assigned

William J. Porter, Orange County State's Attorney, Chelsea, for Plaintiff-Appellee.

Matthew F. Valerio, Defender General, and Dawn Matthews, Appellate Defender, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **EATON, J.** Defendant appeals the trial court's denial of his motion seeking credit against his sentence for time spent under pretrial conditions of release. Defendant urges this Court to apply a rule, a corollary to our decisions in State v. McPhee, State v. Platt, and State v. Kenvin, that would give him credit for days when he was subject to a twenty-four-hour curfew with exceptions, but when there was no guarantee that he was in fact compliant with the curfew. We decline to adopt defendant's proposed rule and instead adopt a rule under which nonstatutory home detention with a condition-of-release curfew is never sufficiently akin to penal incarceration to justify credit. Although our rationale is different than that applied by the trial court, our result is the same. Accordingly, we affirm.

¶ 2.     The underlying facts of this case are not in dispute.  Defendant was arraigned on July 17, 2013, for aggravated domestic assault and cruelty to a child.  The Superior Court, Orange Unit, Criminal Division imposed conditions of pretrial release that included a twenty-four-hour curfew with exceptions only for legal and medical appointments and for emergencies.  The court restricted defendant's place of residence to Orange County, though it did not specify a particular address, and prohibited defendant from leaving Orange County.  Defendant posted cash bail on December 24, 2013 and moved directly to a residence in Orange County under the court's conditions of release.[1]

¶ 3.     On March 12, 2014, at defendant's request, the court added two exceptions to his twenty-four-hour curfew.  The first allowed him to leave home on Saturdays between 9:00 a.m. and 12:00 p.m. to check his post office box in Orange County, go to the bank and visit his mother in Washington County, and run errands in Orange and Washington Counties.  The second allowed him to visit one of his children at the Children's Hour Program at times ordered by the Washington County Family Division.

¶ 4.     On November 24, 2014, defendant was arrested in Windsor County after being stopped for driving with a suspended license.  The State charged him with five misdemeanors: two counts of violating conditions of release, one count of driving with a suspended license, one count of resisting arrest, and one count of escape.  On November 25, 2014, defendant posted bail and the Superior Court, Windsor Unit, Criminal Division released him under conditions that included a twenty-four-hour curfew at his residence with exceptions for medical and legal appointments.[2]  On

---

[1]  Defendant did not immediately post bail because, at the time he was arraigned on the charges underlying the present case, he was incarcerated on an unrelated charge.  Defendant was on furlough when he allegedly committed the new crimes, but his furlough was suspended or revoked by the time of his arraignment on these charges.

[2]  Although the conditions imposed in connection with the Orange County charges continued to allow defendant to leave his home for three hours on Saturday mornings, the conditions imposed in connection with the Windsor County charges did not allow such an outing.  Before the trial court, the State's Attorney and defendant's counsel both represented that the March

March 15, 2015, the Windsor Unit, Criminal Division transferred the case to the Orange Unit, Criminal Division.

¶ 5.    On September 23, 2015, defendant pleaded guilty in the Orange Unit, Criminal Division to aggravated domestic assault, cruelty to a child, escape, and violation of conditions of release.  Pending sentencing, the court modified defendant's conditions to allow him to serve his curfew at either his own residence or the home of his mother, to again allow him to leave the house on Saturdays from 9:00 a.m. to 12:00 p.m. to travel within Orange and Washington Counties for various purposes, and to authorize him to visit his child in Barre at times ordered by the Washington Unit, Family Division.

¶ 6.    On October 12, 2015, the Orange Unit, Criminal Division held a sentencing hearing and determined that defendant was not eligible for credit for any of the time that he was released pursuant to conditions that included a curfew.  The court concluded that the conditions of release throughout the entire period in question "were not comparable to confinement."  The court reasoned that defendant was allowed to choose his place of residence within Orange County, was not under supervision, and was allowed to make "as few or as many legal and medical appointments as would be reasonable, and to do so at places and times of his choosing."

¶ 7.    A summary of the most restrictive conditions in place during the various periods is as follows:

| 12/24/13–3/11/14 | Reside in Orange County; twenty-four-hour curfew except for legal and medical appointments and emergencies. |
| 3/12/14–11/23/14[3] | Reside in Orange County; twenty-four-hour curfew except for legal and medical appointments and emergencies; curfew lifted from 9:00 a.m.–12:00 p.m. on Saturdays to visit his mother and for errands in |

12, 2014 conditions remained in effect until modified by the court in September 2015.  However, on appeal counsel for both parties acknowledged during oral argument that defendant was subject to the more restrictive conditions, with no exception for Saturday errands, after November 25, 2014.

[3]  Defendant acknowledges that he is not under any circumstances eligible for credit for November 24, 2014.  On that day, he was arrested for various crimes while in Windsor County, in violation of the curfew restrictions at issue here.

| | Orange or Washington County; curfew lifted to allow supervised parent-child contact with his children at times ordered by the Washington Family Division. |
|---|---|
| 11/25/14–9/22/15 | Reside in Orange County; twenty-four-hour curfew except for legal and medical appointments. |
| 9/23/15–10/12/15 | Reside in Orange County; twenty-four-hour curfew at defendant's residence or his mother's home in Washington County, except for legal and medical appointments and emergencies; curfew lifted from 9:00 a.m.–12:00 p.m. on Saturdays for errands in Orange or Washington County; curfew lifted to allow supervised parent-child contact with his children at times ordered by the Washington Unit, Family Division. |

¶ 8.     The question on appeal is whether defendant is entitled to credit toward service of his sentence under 13 V.S.A. § 7031 for any of the time he spent prior to his sentencing under conditions of release that included a twenty-four-hour curfew.  Our analysis raises two subsidiary issues: (1) under what circumstances is a defendant subject to a twenty-four-hour curfew with limited exceptions "in custody" for purposes of granting statutory credit against a sentence; and (2) in determining whether a defendant is entitled to credit against a sentence, should a court consider the constraints on the defendant's liberty on a day-by-day basis, or a period-by-period basis?  These are legal questions that we address without deference to the trial court.  State v. Kenvin, 2013 VT 104, ¶ 20, 195 Vt. 166, 87 A.3d 454.

¶ 9.     Under 13 V.S.A. § 7031(b), a court "shall give the person [convicted of an offense] credit toward service of his or her sentence for any days spent in custody."  Our analysis hinges on the meaning of the words "in custody."  Three precedents from this Court, all interpreting the phrase "in custody," provide the starting point for our analysis.  Those cases collectively created a rule under which the trial courts, in reviewing a convicted defendant's claim for credit for time served under 13 V.S.A. § 7031(b), consider whether the individual's pretrial conditions of release were so restrictive as to be tantamount to either institutional confinement or home detention pursuant to 13 V.S.A. § 7554b.

¶ 10.    In the first case, In re McPhee, we established that formal custody by the Department of Corrections is not required to satisfy the "custody" requirement of § 7031(b).  141

Vt. 4, 9, 442 A.2d 1285, 1287-88 (1982). In In re McPhee, the defendant, McPhee, pleaded not guilty to a charge of murder. Id. at 6-7, 442 A.2d at 1286. The trial court set bail at $50,000 and, as a pretrial condition of McPhee's release, required him to stay at an in-patient alcohol treatment facility. Id. at 7, 442 A.2d at 1286. McPhee's initial conditions of release required that he not leave the treatment facility without supervision by a staff member. Id. After McPhee had been at the facility for three months, the trial court amended his conditions of release to permit him to leave the premises without supervision "if he had prior staff authorization and stated his purpose, his destination and his time of return." Id. at 6, 442 A.2d at 1286. McPhee ultimately pleaded guilty and sought credit under 13 V.S.A. § 7031(b) for the time he spent in the treatment center. Id. at 7, 442 A.2d at 1286.

¶ 11.   On appeal, we held that the defendant was entitled to credit under § 7031(b). Id. at 9, 442 A.2d at 1287. Specifically, we reasoned that although we would not "treat custody so uniformly that a release in the custody of a parent which permits living at home becomes indistinguishable from a release in the custody of the commissioner of corrections for institutional confinement," court-ordered placement at a treatment facility was sufficiently restrictive on a defendant's liberty to qualify McPhee for credit. Id.

¶ 12.   In the second case, State v. Platt, we concluded that a defendant released outside of an institutional setting and outside the custody of "any other person" was not "in custody" within the meaning of 13 V.S.A. § 7031(b). 158 Vt. 423, 431, 610 A.2d 139, 145 (1992). In that case, the defendant, Platt was charged with accessory-after-the-fact to murder. Id. at 424-25, 610 A.2d at 141. During the approximately two and one-half years between Platt's arrest and sentencing, he was required to remain in Windham County, to stay at his residence between 11:00 p.m. and 6:00 a.m., and to check in with his probation officers three times each week. Id. at 430, 610 A.2d at 144. We concluded that Platt's case was "distinguishable from McPhee both in kind and degree" and that he was therefore not entitled to credit. Id. at 431, 610 A.2d at 145. Specifically, we

5

looked to decisions from the federal courts, which held that the federal statute required "imprisonment or some comparable institutional confinement," and reasoned that while McPhee was "in the custody of a treatment center and thus was institutionally confined," Platt was "not in the custody of any other person and was not in an institutional setting." Id.[4]

¶ 13.    Finally, our most recent decision on the subject, State v. Kenvin, departed from our prior decisions and created a new set of principles for determining when a defendant is "in custody" pending trial. 2013 VT 104, ¶¶ 18-26. In Kenvin, the court imposed two sets of pretrial conditions. Under the first set of conditions—in place for less than two weeks—Kenvin was subject to a twenty-four-hour curfew at his home and was not permitted to leave his home for any reason. Id. ¶ 26. The court amended those conditions such that Kenvin was confined to his home except to travel to a location where he had cellphone reception, to attend appointments, and to walk his dog. Id. ¶ 23. After comparing the facts of McPhee and Platt, we held that Kenvin was entitled to credit for time spent under the initial conditions, when he was under twenty-four-hour curfew without exceptions, but was not entitled to credit after the court relaxed the conditions and allowed him to leave his home to attend appointments, walk his dog for two hours a day, and get cell service. Kenvin, 2013 VT 104, ¶¶ 25-26. Our holding in Kenvin—that a defendant may be entitled to

---

[4] We note that when McPhee was decided in 1982 and when Platt was decided in 1992, the statutory landscape governing pretrial conditions of release was different than it is now. Specifically, in 1993, the Legislature enacted 13 V.S.A. § 7553a, which permits the trial courts to hold defendants without bail in crimes involving felony acts of violence where the evidence of guilt is great and the trial court makes a finding that the defendant's release poses a risk to the public. 1993, No. 143 (Adj. Sess.), § 1. The Legislature also amended § 7553 in 1993 by inserting the phrase "may be held without bail" in place of the phrase "shall not be bailable as a matter of right." Id. And the home detention program established by § 7554b and the electronic monitoring program established by § 7554d did not come into existence until 2009 and 2013, respectively. 2009, No. 146 (Adj. Sess.), § D4 (home detention program); 2013, No. 179 (Adj. Sess.), § E.339.1 (electronic monitoring program). We note these amendments only to highlight the fact that when this Court decided McPhee and later Platt, it did so against a different backdrop than the one under which we review pretrial conditions of release today. Those differences are relevant because the language of McPhee and Platt must be read within the context of the limited pretrial release options available to trial courts in 1982 and 1992 and the different language applicable to the defendants the State sought to hold without bail.

credit for time spent subject to home confinement <u>outside of</u> Vermont's home detention statute, 13 V.S.A. § 7554b—created a new rule that defendants are entitled to credit for time spent on pretrial conditions of release when those conditions are "sufficiently onerous" to be "akin to incarceration in an institutional setting." <u>Id</u>.

¶ 14. The facts and circumstances of this case cause us to reexamine the <u>Kenvin</u> rule. We conclude that the rule suffers from at least two significant shortcomings. First, the <u>Kenvin</u> test, which relies on a "fact-intensive inquiry into the circumstances of confinement," is so "vague and amorphous" that its practical impact—especially in the trial courts—is "disparity in treatment for similarly situated defendants." <u>Reno v. Koray</u>, 515 U.S. 50, 64 (1995). In the context of sentencing, vague rules lead to unjust outcomes. Compare <u>Kenvin</u>, 2013 VT 104, ¶ 26 (reversing trial court's decision not to credit Kenvin for pretrial time spent in home confinement where Kenvin was constrained to single place, was not permitted discretionary movement or travel, and was subject to twenty-four-hour curfew), with <u>State v. Nelson</u>, No. 2008-012, 2008 WL 4539255, at *2-3 (Vt. Oct. 2008) (unpub. mem.), https://www.vermontjudiciary.org/UPEO2006-2010/eo08-012.pdf [https://perma.cc/3QTL-68ZL] (affirming trial court's decision not to credit Nelson for pretrial time spent in home confinement where Nelson was constrained to his mother's home, was not permitted discretionary movement or travel, and was subject to twenty-four-hour curfew). This Court should not endorse a rule that results in disparate sentencing credit depending on the sentencing judge's interpretation of what constitutes the "functional equivalent" of custody. Being "in custody" means that the government is responsible for a defendant's whereabouts; a condition of release imposing a twenty-four-hour curfew does not put a defendant in anyone's custody. See, e.g., <u>United States v. Zackular,</u> 945 F.2d 423, 425 (1st Cir. 1991) ("While a defendant's movements may be severely curtailed by the conditions of his home confinement, it cannot seriously be doubted that confinement to the comfort of one's own home is not the functional equivalent of incarceration in either a practical or a psychological sense."). That judges may take

7

a different view of what restrictions rise to the level of a defendant being "in custody" highlights the inequity that the Kenvin rule creates. Necessary and reasonable conditions of release have their place, but trial courts should not attempt to convert conditions of release into the equivalent of confinement, especially where the conditions provide for no monitoring to ensure compliance. Conditions of release are mostly imposed when and because a defendant is not in custody. They should not be used for the purposes of creating a fictive custody to trigger credit for time served.

¶ 15. Second, as the facts of this case illustrate, the Kenvin rule entitles a defendant to credit for time served even for periods when the defendant may not have been compliant with his or her restrictive conditions of release. This outcome is the product of the fact that, unlike a pretrial detainee who is held in the physical control of the Department of Corrections (DOC), a defendant who is released pretrial is not "subject to [the DOC's] disciplinary procedures," is not "completely subject to [the DOC's] control," and "cannot be summarily reassigned to a different place of confinement unless a judicial officer revokes his [or her] release." Koray, 515 U.S. at 63.

¶ 16. This case exemplifies the problems with the Kenvin rule and highlights that the twenty-four-hour curfew condition, without more, is a paper tiger. Here, defendant did not comply with his curfew conditions and as a result was arrested and subject to new charges. It would strain credulity beyond the breaking point to suggest that defendant happened to be apprehended in another county the very first day he violated his residency and curfew conditions of release. Because there is no way to determine how long defendant had been in violation of his conditions before he was caught, the Kenvin rule would result in this defendant receiving the same day-for-day credit as a person confined in a penal institution for periods when defendant was likely violating his conditions of release. There is no way to know how long he had violated his conditions of release; all we know is when he was caught. The result of undeserved sentencing credit is manifestly unjust to those who are actually confined and who do not have the ability to say one thing and do another. Because defendant was not subject to close control or oversight by

8

the DOC—as he would have been had he been released on home confinement under 13 V.S.A. § 7554b or held in a detention facility—his promise to abide by conditions is the only assurance the courts or the Department have that he was in fact compliant; without anyone responsible for or monitoring defendant's compliance, this is the equivalent of the fox guarding the henhouse. Allowing credit for time spent under the illusory curfew would undoubtedly result in defendant receiving credit for days or periods when he was subject to restrictive conditions on paper only, when in reality, he was not in compliance with those conditions and was therefore not subjected to the functional equivalent of incarceration. Cf. Platt, 158 Vt. at 431, 610 A.2d at 145. To credit this defendant for days when he was likely in violation of his conditions produces additional disparity: his sentence would be functionally different from that of a defendant who served an equal period of time pretrial in a detention facility because both would receive credit, but while defendant was left to his own devices to accept either actual compliance or the happenstance of being caught, his counterpart was actually confined for the whole time.

¶ 17. For these reasons, among others, the federal courts and most state courts to consider the question of whether to grant credit to defendants who are subject to restrictive pretrial conditions have held that home confinement is not the equivalent of "custody" and therefore have declined to give credit for that time. See, e.g., Koray, 515 U.S. at 65 (holding that individual released pretrial to community treatment center was not in custody for purposes of federal sentencing statute and individual was therefore not entitled to credit); Pinedo v. United States, 955 F.2d 12, 14 (5th Cir. 1992) (holding that federal prisoner is not entitled to credit for restrictive conditions of pretrial release); Moreland v. United States, 968 F.2d 655, 656 (8th Cir. 1992) (declining to give credit for pretrial release to halfway house and noting that First, Second, Fourth, Fifth, Seventh, and Tenth Circuits had reached same conclusion); Zackular, 945 F.2d at 425 ("While a defendant's movements may be severely curtailed by the conditions of his home confinement, it cannot seriously be doubted that confinement to the comfort of one's own home is

9

not the functional equivalent of incarceration in either a practical or a psychological sense."); State v. Climer, 896 P.2d 346, 349-50 (Idaho 1995) (holding that "in custody" did not include pretrial home confinement in part because defendant was not subject to surveillance or lack of privacy); People v. Ramos, 561 N.E.2d 643, 647 (Ill. 1990) (holding that home confinement was not time spent "in custody" and reasoning that granting credit for time spent on bond does not serve purpose of credit-against-sentence statute, namely "to ensure that defendants do not ultimately remain incarcerated for periods in excess of their eventual sentences"); Commonwealth v. Morasse, 842 N.E.2d 909, 915 (Mass. 2006) (holding that home confinement does not qualify for sentencing credit); State v. Jordan, 485 N.W.2d 198, 201 (Neb. 1992) ("[W]e hold, for the purpose of [Nebraska's sentence credit statute], 'in custody' means judicially imposed physical confinement in a governmental facility authorized for detention, control, or supervision of a defendant before, during, or after a criminal charge.").

¶ 18.    As we have acknowledged before, "this Court is not a slavish adherent to the principle of stare decisis," and we will overrule prior precedents only when doing so is plainly justified by "our community's ever-evolving circumstances and experiences." State v. Carrolton, 2011 VT 131, ¶ 15, 191 Vt. 68, 39 A.3d 705. For the reasons explained above, we now conclude that the rule we adopted in Kenvin is ripe for revisiting, and to the extent that Kenvin permitted credit for home detention outside the statutory programs for home confinement and electronic monitoring outlined in 13 V.S.A. § 7554b and § 7554d, it is overruled. In its place, we adopt a bright-line rule: a defendant who is released pretrial under a curfew established by conditions of release and who is later sentenced to jail time is not entitled to credit under 13 V.S.A. § 7031(b) for the time spent on curfew under conditions of release. A defendant is entitled to credit when the court orders the defendant released pursuant to the statutory home detention program in § 7554b or the electronic monitoring program in § 7554d.

¶ 19.    That conclusion is supported by the purpose of the statute.  The phrase "in custody" is not plain on its face and we must therefore ascertain legislative intent by reference to "the subject matter of the law, its effects and consequences, and the reason and spirit of the law."  State v. Dann, 167 Vt. 119, 132, 702 A.2d 105, 113 (1997).  As other courts have noted, "in custody" means—at a minimum—that a defendant is either incarcerated in a penal institution, held by court order in a treatment facility,[5] or released pursuant to the home detention or electronic monitoring program.  See, e.g., Jordan, 485 N.W.2d at 201.  Unlike other state courts and the federal courts, however, we decline to extend the rule that we adopt today to categorically exclude pretrial electronic monitoring, statutory home detention, or court-ordered placement in a treatment facility. Contra Moreland, 968 F.2d at 656 (declining to give credit for pretrial release to halfway house and noting that First, Second, Fourth, Fifth, Seventh and Tenth Circuits had reached same conclusion); Zackular, 945 F.2d at 425; Bush v. State, 2 S.W.3d 761,  781 (Ark. 1999) (reasoning that "pretrial home detention or electronic monitoring is not equivalent to being 'in custody' for purposes of sentencing credit"); Morasse, 842 N.E.2d at 915 (holding that home confinement does not qualify for sentencing credit); Commonwealth v. Kyle, 874 A.2d 12, 22 (Pa. 2005) (adopting bright-line rule and holding that pretrial release, even under electronic monitoring, is not time spent "in custody" for purposes of state's credit statute).

¶ 20.    We conclude that our decision in Kenvin represented a departure from the rules adopted by most courts to address the meaning of the phrase "in custody," and that departure has caused inequitable results that we presume the Legislature did not intend.  See Wesco, Inc. v. Sorrell, 2004 VT 102, ¶ 14, 177 Vt. 287, 865 A.2d 350 ("[W]e favor interpretations of statutes that further fair, rational consequences, and we presume that the Legislature does not intend an

---

[5]  We do not revisit our prior determination that court-ordered placement in a residential treatment program as a condition of release may be sufficiently restrictive as to constitute being "in custody."  See McPhee, 141 Vt. at 9, 442 A.2d at 1287.

interpretation that would lead to absurd or irrational consequences." (quotations omitted)). Our conclusion—that the phrase "in custody" does not encompass nonstatutory home confinement as a condition of pretrial release—furthers the goals of this State's unique statutory scheme governing pretrial release.

¶ 21. Specifically, the Legislature has long required that conditions of release impose the least restrictive conditions necessary to ensure a defendant's appearance and protect the public. See 13 V.S.A. § 7554(a)(1), (2). In 2010, the Legislature created a program of home detention for defendants who would otherwise be held in a correctional facility while awaiting trial. 2009, No. 146 (Adj. Sess.), § D4 (codified at 13 V.S.A. § 7554b). Section 7554b was created in the context of the 2010 Challenges for Change government reform legislation, which established the goal of reducing the number of incarcerated people and decreasing the corrections budget. 2009, No. 68 (Adj. Sess.), § 5. In 2014, the Legislature created a pilot program to determine the feasibility and effectiveness of electronic monitoring as an alternative to pretrial institutional confinement. 2013, No. 179 (Adj. Sess.), § E.339.1 (codified as 13 V.S.A. § 7554d). These enactments demonstrate the Legislature's commitment to supporting alternatives to pretrial institutional confinement, and in particular, to allowing defendants to remain at home on pretrial release.

¶ 22. We draw two conclusions from these enactments. First, where the Legislature has intended for defendants to receive credit for time spent under home detention, it has expressed that intention explicitly: 13 V.S.A. § 7554b defines the circumstances under which home detention is appropriate and provides that a defendant released on pretrial home detention "shall remain <u>in the custody</u> of the commissioner of Corrections with conditions set by the Court." § 7554b(a) (emphasis added). To read the home detention statute as providing for the same thing as a twenty-four-hour curfew imposed under § 7554(a)(1) would be to render the home detention statute superfluous. See <u>State v. Beattie</u>, 157 Vt. 162, 165, 596 A.2d 919, 921 (1991) (construction of statute that renders part of it superfluous is not favored). In other words, if a defendant who is

subject to a restrictive curfew is "in custody," the Legislature would not have needed to include that language in the home detention statute, since the home detention statute creates effectively the same thing as a highly restrictive curfew, except with monitoring: "a program of confinement and supervision that restricts a defendant to a preapproved residence continuously, except for authorized absences, and is enforced by appropriate means of surveillance and electronic monitoring by the Department of Corrections." § 7554b(a).

¶ 23.    Second, given the express language of the statutory scheme, we conclude that the Legislature did not intend to create a rule for sentencing that would preclude a defendant from receiving credit for time served on statutory home detention, under electronic monitoring, or in a similarly restrictive treatment facility.  See McPhee, 141 Vt. at 9, 442 A.2d at 1287 (holding that defendant was entitled to credit for time spent in court-order pretrial alcohol treatment program but recognizing that this Court would not "treat custody so uniformly that a release in the custody of a parent which permits living at home becomes indistinguishable from a release in the custody of the commissioner of corrections for institutional confinement").  In short, then, the phrase "in custody" in § 7031(a) requires that a defendant be subject to the physical control of the DOC or of a court-ordered treatment facility.

¶ 24.    To allow sentencing credit for time when no one is minding the store is unfair to those who truly are in custody, and the Legislative scheme at issue here supports that conclusion. Because we hold that defendant's conditions of release did not entitle him to credit, we need not reach the second subsidiary question raised by this appeal.

Affirmed.

_____
Associate Justice

13