2013 VT 104



State v. Kenvin (2012-099)

 

2013 VT 104

 

[Filed 18-Oct-2013]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 2013 VT 104
 
  


 No. 2012-099
 
  


 State of Vermont
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
      v.
 
 
 Superior Court, Franklin Unit,
 
 
  
 
 
 Criminal Division
 
 
  
 
 
  
 
 
 Joseph T. Kenvin
 
 
 March Term, 2013
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Robert
 A. Mello, J.
 
 
  
 
 James A. Hughes, Franklin County State’s Attorney, St.
Albans, for Plaintiff-Appellee.

 

Matthew F. Valerio, Defender General, and Anna Saxman,
Deputy Defender General,

  Montpelier, for Defendant-Appellant. 

 

 

PRESENT:  Reiber, C.J., Dooley, Skoglund, Burgess and
Robinson, JJ.

 

 

¶ 1.            
SKOGLUND, J.   Defendant Joseph Kenvin appeals from a
sentencing reconsideration decision by the superior court, reducing the time to
serve on his conviction for careless and negligent driving from eleven-to-twelve
months to nine-to-twelve months.  Defendant contends the trial court erred
in: (1) finding him “very negligent” in causing the death of a collision
victim, despite the jury’s acquittal on the underlying charge of grossly
negligent operation, death resulting, and (2) ruling that defendant was not
entitled to credit for time served while on restrictive conditions of pretrial
release.  We affirm defendant’s sentence but remand to the trial court to
provide credit to defendant for the period between March 10, 2010 and March 22,
2010 during which defendant was subject to a twenty-four hour curfew.  

¶ 2.            
The facts are as follows.  This case arises out of a September 3,
2008 motor vehicle collision in which defendant’s pickup truck collided with a
motorcycle.  The motorcyclist died from injuries sustained in the
accident.  The State charged defendant with grossly negligent operation,
death resulting, under 23 V.S.A. § 1091(b).  Following arraignment,
the court released defendant on conditions of release.  

¶ 3.            
In February 2010, a jury acquitted defendant of grossly negligent
operation, death resulting, and convicted him of the lesser-included offense of
negligent operation, 23 V.S.A. § 1091(a).  The court held a
sentencing hearing on March 10, 2010.  At the hearing, the court found
that defendant caused the death of the motorcyclist:

This
death was caused because you were a lazy driver.  Instead of going up and
making a turn where you should have made a turn, you took—you cut your turn, and
you made a lazy turn.  There’s no question about the fact that you [bear]
the sole responsibility for this.  This is [as]
serious . . . careless and negligent driving as you can
get.  

 

The court sentenced defendant to
“the maximum [it] could give [defendant],” eleven-to-twelve months to
serve.  The court also signed two restitution
orders.  The first order was for the decedent motorcyclist’s wife to cover
expenses associated with family travel to the funeral, storage costs for the
decedent’s motorcycle, and a radiology bill from the decedent’s hospitalization
not covered by insurance.  The second order was for the victim’s
compensation program.  

¶ 4.            
Defendant requested a stay of execution pending an appeal to this
Court.  The superior court granted the stay and imposed the conditions of
release in place prior to defendant’s trial.  The court also added a
twenty-four-hour curfew, requiring defendant “to stay in his home at all
times.  No exceptions.”  The court told defendant “I consider you to
be a dangerous person.  You have three times been convicted of a dangerous
activity with respect to a motor vehicle on the highway.  You’ve killed a
person.  As far as I’m concerned, you’re a menace to society.”  

¶ 5.            
The next day, defendant filed a motion requesting the court to amend his
conditions of release.  Defendant sought several modifications, and
specifically requested the ability to travel to an area where cell phone
service was available because the only household income at that time was
defendant’s weekly unemployment benefits check.  Defendant’s motion
explained that in order to continue receiving unemployment compensation, he
needed to maintain a work search and to have weekly internet contact with the
unemployment division.  The motion identified the library where defendant
typically used the internet for this contact as well as the establishment where
defendant cashed his unemployment compensation checks, though the motion did
not request permission for trips to these locations.  The court granted
the motion on March 22, 2010, amending the conditions of release to allow
defendant to travel to a location where cell phone service was available, to
appear at meetings at his attorney’s office, to attend necessary medical appointments,
and to walk his dog on two, one-hour walks per day beginning and ending at his
residence.  The conditions did not specify a person responsible for the
custody of defendant and did not dictate where he must reside.  It is
undisputed that defendant complied with these conditions.  

¶ 6.            
On April 7, 2010, defendant filed a notice of appeal and election not to
commence service of his sentence.  In his direct appeal, defendant
challenged the trial court’s restitution orders as well as his sentence of
eleven-to-twelve months to serve.  State v. Kenvin, 2011 VT 123,
¶¶ 6, 18, 191 Vt. 30, 38 A.3d 26.  The appeal challenged the
sentence, arguing only that a sentence with a gap of thirty days between the
minimum and maximum term was a fixed sentence in violation of 13 V.S.A. §
7031(a).  Defendant did not challenge the sentence on the basis that the
sentencing judge grounded the sentence provision on the finding that defendant
caused the death of the victim.  While the appeal was pending, defendant
filed a motion on March 2, 2011, to further amend his conditions of release for
purposes of “work search and employment,” in order to “to seek work, and go to
and from work once employment is secured.”  The court granted the motion
on March 22, 2011, and altered defendant’s conditions to allow him to look for
work from 8 a.m. until noon, and at other times by scheduled appointment. 


¶ 7.            
Defendant filed a motion to again amend his conditions of release on
October 31, 2011, requesting permission “to drive for work search and work
purposes, as long as he possesses a valid driver’s license.”  Before the
court disposed of the motion, on November 4, 2011, this Court decided
defendant’s direct appeal.  We upheld
defendant’s sentence of eleven-to-twelve months to serve.  We
reversed and remanded the restitution orders, however, holding that Vermont’s
restitution statute, 13 V.S.A. § 7043, did not authorize restitution for
the family’s travel or the costs of motorcycle storage, but it did cover the
decedent’s hospital bill.  Kenvin, 2011 VT 123, ¶ 11.  As to the former expenses,
we found no facts or law to support a finding that these financial
injuries were the “direct result” of the crime.  Id. ¶ 9 (citing 13
V.S.A. § 5301(4)).  

¶ 8.            
Defendant then filed a motion for sentence reconsideration with the
trial court.  Defendant asserted that the conditions of release originally
imposed on March 10, 2010, and amended on March 22, 2010, were “very stringent
conditions of release that amounted to the equivalent of home confinement”;
that defendant “was not permitted to drive under any circumstances, though he
possessed a valid license”; and that even when the court modified defendant’s
conditions on March 22, 2011 to allow driving for an employment search and
travel upon securing a position, “the rural nature of his residence, his
inability to drive, and his domestic partner’s other obligations effectively
did little to remove the restrictiveness of the court-imposed
conditions.”  Defendant stated that the imposition of these conditions
caused further deterioration of his household’s financial condition and
warranted reconsideration of his sentence.  

¶ 9.            
The court held a hearing on the motion for sentence reconsideration on
March 1, 2012, issuing a written decision two weeks later.[1]  On the issue of sentence length,
the court made two findings relevant to this appeal.  First, the court
found that defendant was “very negligent . . . cutting the
corner [of a left hand turn] out of laziness, and hitting an oncoming
motorcycle almost head on in the motorcycle’s lane of travel.”  Second,
the court found by a preponderance of the evidence that defendant’s negligence
caused the accident and the motorcyclist’s death.  The court reasoned that
the jury’s decisions to acquit defendant of grossly negligent operation, death
resulting, and to convict defendant of negligent operation, left the court free
to decide defendant caused the motorcyclist’s death.  However, the
sentencing reconsideration judge disagreed with one aspect of the sentencing
judge’s decision.  The court concluded it was “excessively harsh” for the
sentencing judge to characterize defendant as a “menace to society,” a comment
the court attributed to the distressing evidence presented at trial.  The
court weighed mitigating factors against the nature of the accident and
defendant’s driving history, and decided that deterrence was the most important
purpose to be served by defendant’s sentence.  Ultimately, the court
reduced defendant’s sentence to nine-to-twelve months to serve.  

¶ 10.        
The court also ruled defendant was not “in custody” under 13 V.S.A.
§ 7031 and therefore not entitled to credit for time served for the period
he was on conditions of release awaiting the decision in his direct
appeal.  The court came to this conclusion for three reasons: (1) events
occurring since the original sentencing hearing, including defendant’s
financial condition, were not the proper subject of sentencing reconsideration;
(2) defendant’s conditions of release, though restrictive, were not akin to
incarceration in an institution; and (3) it was possible for defendant to avoid
“virtual home confinement” by serving his sentence during the pendency of his
appeal, and “[h]aving elected to proceed in that fashion, defendant cannot now
argue that his sentence must be reduced due to the passage of time.”  

¶ 11.        
Defendant advances two principal arguments on appeal.  First,
defendant posits the court’s findings that defendant was “very negligent” and
caused the motorcylist’s death reflect an improper reliance upon speculative
and unreliable factors during sentencing reconsideration.  Second,
defendant asserts that he is entitled to credit for time served because his
conditions of release were the functional equivalent of home detention.[2]  

¶ 12.        
Under 13 V.S.A. § 7042(a), “[a]ny court imposing a
sentence . . . may upon its own initiative or motion of the
defendant, reduce the sentence.”  “The purpose
of sentence reconsideration is to allow a second look at the sentencing
decision absent the heat of trial pressures and in calm reflection to determine
that it is correct, fair, and serves the ends of justice.”  State v.
Dean, 148 Vt. 510, 513, 536 A.2d 909, 912 (1987) (quotation omitted). 
Sentence reconsideration gives the court “an opportunity to consider anew the
circumstances and factors present at the time of the original sentencing. 
It is not intended as a forum to review post-incarceration circumstances or
events.”  State v. King, 2007 VT 124, ¶ 6, 183 Vt. 539, 944
A.2d 224 (mem.) (quotation and citation omitted).  But see State v.
Derouchie, 157 Vt. 573, 577, 600 A.2d 1323, 1325 (1991) (allowing
consideration of post-sentencing circumstances because court expressly informed
defendant at original sentencing that “his situation between sentencing and
reconsideration would be relevant”).  In determining if a sentence is
unwise or unjust so as to warrant sentence modification, “the trial court has
wide discretion to consider such factors as it believes are relevant.”  Dean,
148 Vt. at 513, 536 A.2d at 912.  Accordingly, this Court reviews
sentencing reconsideration decisions for abuse of discretion.  King,
2007 VT 124, ¶ 6.  Here, the reconsideration court lowered the
sentence imposed by the trial judge.  While the result does not absolutely
prevent relief, it puts in perspective defendant’s claim that the
reconsideration court’s result is too harsh.  

¶ 13.        
Defendant contends that the jury found defendant was not grossly
negligent, and therefore on sentence reconsideration it was impermissible for
the court to make a finding that defendant was “very negligent.”  As we
have explained, “[t]he propensity and nature of the
offender, the particular acts by which the crime was committed, and the
circumstances of the offense are all relevant to the determination of an
appropriate sentence.”  State v. Bushway, 146 Vt. 405, 407, 505 A.2d 660, 661 (1985); see also Derouchie,
157 Vt. at 577-79, 600 A.2d at 1325-26 (upholding denial of motion for sentence
reconsideration and holding it was not clearly erroneous for trial court to
consider its assessment that defendant was insincere in acknowledging
responsibility for his offense); State v. Thompson, 150 Vt. 640,
646, 556 A.2d 95, 99 (1989) (recognizing that force is not an essential element
of sexual assault on minor charge, but this fact does not “make the evidence that force of some sort was involved
irrelevant at trial or improper for consideration of
sentence . . . it is relevant to the propensities of
defendant and the circumstances under which the crime was committed, all
recognized as proper for the sentencing court’s consideration”); Bushway,
146 Vt. at 407-08, 505 A.2d at 662 (holding victim’s emotional testimony
describing defendant’s actions gave court “firsthand insight into both the
defendant’s character and the nature of the criminal act for which the
defendant was being sentenced”).  It was within the court’s discretion to
make a finding that defendant was “very negligent,” even though the jury
acquitted defendant of grossly negligent operation, death
resulting.  The court’s assessment of defendant’s actions leading up to
the motor-vehicle accident, characterized by the court as “lazy,” was relevant
to evaluating the appropriateness of defendant’s sentence.  Moreover, the court supported this finding in its review of
the circumstances of the accident and defendant’s driving history—and these
factors informed the court’s conclusion that deterrence was the most important
function of sentencing to be served in this case.[3]  

¶ 14.        
Defendant further contends the trial court erred in finding that
defendant caused the death of the motorcyclist, relying on this Court’s
statement in Kenvin that “absent any element
of injury or harm, the conviction of negligent operation can not be causally
linked to the decedent’s death, and thus cannot support a restitution award for
any resulting financial loss.”  2011 VT 123, ¶ 12.  In defendant’s
view, this statement suggests that we held as a matter of law that the
motorcyclist’s death was not linked to defendant’s conviction for purposes of
restitution, and therefore cannot be linked to the conviction for sentencing
purposes.  

¶ 15.        
Defendant overreads our holding in Kenvin. 
Despite the broad language noted above, we did not hold in Kenvin that,
as a matter of law, the motorcyclist’s death was not caused by the actions for
which defendant was convicted of careless and negligent operation.  In
fact, in Kenvin, we affirmed an award of restitution to cover a medical
bill of the decedent that was not covered by insurance, thereby recognizing the
direct causal link between the conduct for which the jury convicted defendant
and the decedent’s injuries and, ultimately, death.  2011 VT 123, ¶
13.  The restitution claims we rejected in Kenvin as too attenuated
were those made by his family members, who incurred costs traveling to the
decedent’s funeral and storing his motorcycle.  We noted that § 7043
“is ‘much narrower’ than restitution statutes in other jurisdictions” and that
it requires a “direct link” between the crime and the financial injury to a
victim for which restitution is sought.  Id. ¶ 9. 
Although we recognized that the decedent’s family had
suffered greatly, we concluded that under the applicable statute, “[t]he
decedent . . . was the sole victim of defendant’s crime for consideration of
restitution.”  Id. ¶ 13.  Nothing about our holding in Kenvin—recognizing
the direct link between the crime for which defendant was convicted and the
injury to and ultimate death of the motorcyclist, but concluding that the
motorcyclist’s surviving family members were not included as victims under the
statute—is inconsistent with the trial court’s pointing to the motorcyclist’s
death as a result of defendant’s actions as a factor in the resentencing
decision.  We note, moreover, that the original sentencing judge in this
case found that defendant caused the motorcyclist’s death in reaching the
sentence, and defendant never challenged this finding on appeal.  Rather
than making a new finding on this point, the sentence reconsideration judge was
simply following the original finding.  

¶ 16.        
Defendant further claims that the court guessed as to the meaning of the
jury verdict and arrived at its own conclusions without any supporting proof or
evidence, comparing the court’s conclusion regarding the cause of the
motorcyclist’s death to the speculative and unreliable information held
improper for sentencing consideration in State v. Neale, 145 Vt. 423,
435-36, 491 A.2d 1025, 1033 (1985).  In Neale, this Court held that
it was improper for a sentencing judge to consider statements by a sheriff
comprised of “unsubstantiated insinuations” irrelevant to the actual criminal
conviction.  Id.  The jury’s
decision to find defendant guilty of careless and negligent driving and
not guilty of grossly negligent operation, death resulting, did not, as a
matter of law, resolve the issue of causation of the motorcyclist’s death, and
did not preclude the court from doing so.  In contrast to Neale,
the sentencing reconsideration court here based its findings on a review of
evidence regarding defendant’s acts and the circumstances of the
offense—factors within its discretion to consider.  With respect to
causation, the sentencing reconsideration court’s decision is identical to that
of the trial judge, who viewed the evidence.  

¶ 17.        
Finally, defendant asserts the trial court
“enhanced” his sentence based on its finding that defendant was “very
negligent” in causing the motorcyclist’s death and that it would be reversible
error to convict defendant of “careless and negligent driving causing death,” a
nonexistent crime.  As the Court explained in Thompson,
proof of circumstances relevant to the crime convicted is not offered for
sentencing “enhancement” purposes.  150 Vt. at 644, 556 A.2d at 98. 
“This is a misuse of the term ‘enhancement.’  If it were otherwise, proof
of any circumstance that might persuade a judge to raise the sentence, even
within the statutory range, would fall within the doctrine.  This is
plainly not so.”  Id.; State v. Muscari, 174 Vt.
101, 111-13, 807 A.2d 407, 416 (2002) (rejecting contention that court’s
consideration of defendant’s silence and apparent lack of remorse in sentencing
process served as basis to “enhance” defendant’s sentence because sentence was
within statutory guidelines for crime and “it is entirely proper for a court to
consider whether a defendant has accepted responsibility for the offense at
sentencing”).  The court was within its discretion to consider
defendant’s negligence and the cause of the decedent’s death in designing
defendant’s sentence, which adhered to the statutory maximum for careless and
negligent operation.  See 23 V.S.A. § 1091(a)(3).  

¶ 18.        
Defendant next argues that the trial court erred in not granting him
credit against his sentence for two periods he was released on conditions
pending the outcome of his direct appeal.  Defendant seeks credit first
for his time on conditions of release from March 10, 2010 to March 22, 2010,
along with credit for his continuing release on modified conditions from March
22, 2010 through March 22, 2011.  

¶ 19.        
From March 10, 2010 to March 22, 2010, defendant’s conditions of release
required him to stay in his home at all times without exception.  On
defendant’s motion, the court modified the conditions which remained in place
until March 22, 2011.  As amended, the somewhat relaxed conditions allowed
defendant to travel to a location where cell phone service was available, to
attend meetings at his attorney’s office, to attend necessary medical
appointments, and to walk his dog for an hour twice daily beginning and ending
at his residence.  Defendant does not seek credit for time spent on the
conditions as altered again upon his motion on March 22, 2011, which allowed
for defendant to leave his residence to look for work from 8 a.m. until noon,
and at other times by scheduled appointment.  

¶ 20.        
“The court shall give
the person [convicted of an offense] credit toward service of his or her
sentence for any days spent in custody in connection with the offense for which
[the] sentence was imposed.”  13 V.S.A. § 7031(b).  The statute
“call[s] for a case-by-case factual determination” as to whether a defendant’s
conditions of release amount to custody under § 7031(b).  State v.
Platt, 158 Vt. 423, 431, 610 A.2d 139, 144 (1992).  When the sentencing court is presented with a
request for credit for time spent in custody under § 7031, the calculation
involves a legal question.  State v. Sommer, 2011 VT 59, ¶ 8,
190 Vt. 236, 27 A.3d 1059.  The Court reviews questions of law de novo. 
See Progressive Cas. Ins. Co. v. Estate of Keenan, 2007 VT 86, ¶ 6,
182 Vt. 298, 937 A.2d 630.

¶ 21.        
The sentencing
reconsideration court ruled that “although defendant’s release conditions were
restrictive, they were not akin to incarceration in a penal facility.” 
(Quotation omitted.)  Two decisions inform our evaluation of this
conclusion.  First, in In re McPhee, the Court held that conditions
of release mandating a defendant’s institutionalization at a treatment facility
invoked the credit provision of § 7031.  141 Vt. 4, 9, 442 A.2d 1285,
1287-88 (1982).  The Court noted that the conditions allowed the defendant
to leave the institution unsupervised if he obtained prior authorization from
staff and stated his purpose, destination, and time of return.  The
conditions of release required the defendant both to reside at the institution
and to abide by its rules.  While the defendant was not in the custody of
the Commissioner of Corrections, the Court was “satisfied that the lower court’s decision to award credit to this
defendant is fully supportable in the light of these circumstances.”  Id.
at 9, 442 A.2d at 1288.  

¶ 22.        
Second, in Platt,
the defendant’s conditions of release required him to stay in the county where
he lived, to remain in his residence from 11 p.m. to 6 a.m., and to check in
with his probation officer three times a week.  The defendant was allowed
to deviate from these requirements upon his occasional request, such as for
medical needs and family events.  In evaluating whether the defendant’s
conditions amounted to custody, we examined McPhee and further explained
that the pertinent language of § 7031 “is identical to that of the
federal statute as it existed prior to November 1, 1986.”  Id. at
431, 610 A.2d at 145 (citing 18 U.S.C. § 3568, repealed by Pub. L. No.
98-473, 98 Stat. 1837, § 212(a)(1)).  We explained that “[t]he
federal courts have held that the federal statute requires imprisonment or some
comparable institutional confinement for credit to be earned.”  Id.
 We held in Platt that the defendant was not entitled to credit for
time served while on conditions, reasoning in part that the defendant was
neither in the custody of another person nor institutionally confined.  Id. 
Moreover, though the conditions restricted the defendant to his home for seven
hours each night, they permitted him to choose his residence, “spend his days
how and where he wished, within the confines of a county, so long as he did not
violate the law.”  Id.  

¶ 23.        
Our analysis begins with defendant’s amended conditions in place from
March 22, 2010 until March 22, 2011, which relegated defendant to his home but
allowed him to travel to a cell-phone-reception area, attend appointments, and
walk his dog.  Weighing McPhee and Platt against the trial
court’s decision not to award defendant credit and the facts of this case, we
conclude that defendant is not eligible for § 7031 credit for this time
period.  Defendant’s conditions did not specify a person responsible for
his custody and did not dictate the locality of his residence.  Defendant
was not institutionally confined and failed on this record to show some
comparable institutional confinement in his situation living at home.  See
In re McPhee, 141 Vt. at 9, 442 A.2d at 1287
(stating in context of § 7031(b) credit, Court will not “treat custody so uniformly that a release in the custody of
a parent which permits living at home becomes indistinguishable from a release
in the custody of the commissioner of corrections for institutional
confinement”).  He was free to spend his days as he wished in his
home, to travel to a location where cell-phone service was available at his
leisure, and to walk his dog to any place, whenever he desired, so long as the
walks began and ended at his home and did not exceed one hour apiece.  The
conditions allowed defendant to attend meetings with his attorney as well as
medical appointments.  Defendant was not accountable to any person for
these actions; the court required no prior authorization and no log of the
purpose, destination, or duration of defendant’s movements.

¶ 24.        
Defendant argues further that he is entitled to credit because the
Legislature determined “home detention” qualifies for credit, as evinced by
Vermont’s home detention program, 13 V.S.A. § 7554b.  The home detention program statute,
13 V.S.A. § 7554b(a), provides:

As used in this section, “home
detention” means a program of confinement and supervision that restricts a
defendant to a preapproved residence continuously, except for authorized
absences, and is enforced by appropriate means of surveillance and electronic
monitoring by the department of corrections.  The court may authorize
scheduled absences such as work, school, or treatment.  Any changes in the
schedule shall be solely at the discretion of the department of
corrections.  A defendant who is on home detention shall remain in the
custody of the commissioner of the department of corrections with conditions
set by the court.

 

¶ 25.        
We are not persuaded that defendant’s conditions from March 22, 2010 to
March 22, 2011 were the equivalent of home detention as described in
§ 7554b.  While it is undisputed that defendant complied with his
conditions of release, defendant points to no evidence in the record—and indeed
none exists—to support his assertion that “he was presumably being monitored
for compliance with his conditions” as would be the case if defendant was in
the custody of the commissioner of corrections.  In contrast to § 7554b,
defendant’s conditions did not have in place enforcement mechanisms such as
surveillance and/or electronic monitoring.  Moreover, the court did not
require defendant to live in a “preapproved residence continuously, except for
authorized absences” as mandated by § 7554b.[4]  As discussed, defendant’s
conditions allowed substantial freedom in movement at his discretion—rather
than the judgment of another—which is not contemplated by the home detention
program.  Under the circumstances of this case, defendant failed to
establish that his conditions of release from March 22, 2010 and March 22,
2011, were, by analogy, substantially as limiting as restrictions in the home
detention program.  The trial court’s conclusion that defendant’s
conditions were not akin to incarceration in an institutional setting under
§ 7031 was correct; defendant is not entitled to credit for time served
during that period.[5] 


¶ 26.        
However, in light of
the above analysis, we cannot reach the same conclusion for defendant’s earlier
term of home confinement between March 10, 2010 and March 22, 2010. 
During these days defendant’s conditions of release required him to stay
in his home at all times without exception.  The conditions of release in
place during this time did not require defendant’s institutionalization and did
not have enforcement mechanisms in place comparable to those in § 7554b(a).  However, the
conditions were significantly more restrictive than those later in place from
March 22, 2010 to March 22, 2011, and mandated defendant’s continual residence
in his home without exception.  This condition constrained defendant to a
single place and did not allow any discretionary movement or travel by defendant—with
or without permission or supervision—as allowed by the amended
conditions.  This rigid, twenty-four-hour curfew was sufficiently onerous
to invoke the credit provision of § 7031, and he is entitled to credit for
those days he spent “in custody.”

¶ 27.        
Defendant’s final
contention is that imposition of draconian conditions of release following the
request for and granting of a stay of execution of defendant’s sentence
appeared vindictive and penalized him for taking an appeal.  Courts cannot
penalize a defendant for exercising his or her right to appeal.  State
v. Thompson, 158 Vt. 452, 456, 613 A.2d 192, 195 (1992).  To avoid running afoul of retaliatory sentencing rules the courts can “impose[] a penalty not more severe than that which it
originally proposed” when
a defendant indicates an intent to appeal.  Id. at 458, 613 A.2d at
196.  

¶ 28.        
Defendant’s argument
that the court was vindictive in imposing conditions of release is incongruent
with the logic underlying § 7031 credit for time served.  From March
22, 2010 to March 22, 2011, defendant’s conditions did not amount to “custody”
under § 7031, and therefore cannot be considered a sentence or penalty
imposed to chill his right to appeal.  Further, defendant is entitled to
sentencing credit for the time he spent “in custody” from March 10, 2010 to
March 22, 2010.  Neither of these results increase defendant’s overall
sentence.  

We affirm defendant’s sentence
but remand to the trial court to provide credit to defendant for the period
between March 10, 2010 and March 22, 2010 as indicated in this opinion. 

 

 


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  











[1] 
The judge who presided over defendant’s trial and sentenced defendant retired
prior to defendant filing the motion for sentence reconsideration.  The
Administrative Judge for Trial Courts designated a different judge to hear and
dispose of all matters in the retired judge’s pending cases, including
defendant’s motion.  Defendant objected to this order below, but does not
pursue the challenge on appeal.  





[2] 
Defendant presented evidence to the sentencing reconsideration court intending
to demonstrate that his sentence was excessive and disproportional, presumably
intended as a basis for reducing his sentence.  Defendant includes
information on proportionality in his appellate brief, but does not further
advance this argument on appeal.  Therefore, the Court will not address
this issue. 





[3] 
In a supplemental filing made after oral argument, defendant cites Commonwealth
v. McCravy, 723 N.E.2d 517 (Mass. 2000), to support his argument that his
sentence could not be based upon a crime that he was acquitted of or with which
he was not charged.  Defendant was not sentenced for a crime that he did
not commit, nor was he sentenced for a crime with which he was not
charged.  We thus find defendant’s reliance on this case to be
misplaced.  





[4] 
This restriction also distinguishes defendant’s conditions of release from the
home confinement furlough statute.  See 28 V.S.A. § 808b (requiring
defendant on home confinement furlough “to remain at a preapproved residence at all times except for scheduled
and preapproved absences for work, school, treatment, attorney appointments,
court appearances, and other obligations as the court may order”). 
Further, it was not necessary for the court to determine if defendant’s
residence was appropriate for home confinement furlough.  See id.
§ 808b(d)(1)-(3).  

 





[5] 
We need not address the trial court’s other reasons for concluding defendant
was not “in custody” under § 7031.  See Sorge v. State, 171
Vt. 171, 174 n.*, 762 A.2d 816, 818 n.* (2000) (“This
Court may affirm a trial court’s decision if the correct result is reached,
despite the fact that the court based its decision on a different or improper
rationale.”).